UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHARDE YVETTE KLOTZBACH,

                Plaintiff,

v.                                                                                      1:17-CV-0760
                                                                                        (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>TIMOTHY HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | JOHANNY SANTANA, ESQ.<br>MEGHAN MCEVOY, ESQ.<br>DENNIS CANNING, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

On June 11, 2018, the parties consented, in accordance with a Standing Order to proceed before the undersigned. (Dkt. No. 18.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

**I.     RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1992. (T. 101.) She completed high school. (T. 201.) Generally, Plaintiff's alleged disability consists of bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), anxiety, depression, conduct disorder, and oppositional defiant disorder. (T. 200.) Her alleged disability onset date is January 1, 1999. (T. 101.) She has no past relevant work.

### B. Procedural History

On November 11, 2013, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 101.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 18, 2015, and again on January 20, 2016, Plaintiff appeared before the ALJ, John Murdock. (T. 37-75, 76-95.) On February 23, 2016, ALJ Murdock issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-36.) On June 8, 2017 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 21-33.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 11, 2013. (T. 21.) Second, the ALJ found Plaintiff had the severe impairments of schizoaffective disorder; history of ADHD; learning disorder; personality disorder; and major depressive disorder. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the

listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 22.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with additional non-exertional mental limitations. (T. 25.) The ALJ limited Plaintiff to: simple, repetitive tasks or instructions; occasional contact with supervisors and public; and work that does not involve production line work to avoid stress. (*Id*.) Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 32-33.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes one argument in support of her motion for judgment on the pleadings. Plaintiff argues the ALJ inappropriately substituted his own lay opinion for that of a medical opinion. (Dkt. No. 13 at 9-13.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly evaluated Plaintiff's credibility and RFC. (Dkt. No. 15 at 15-21.) Second, and lastly, Defendant argues substantial evidence supported the ALJ's RFC determination and finding that Plaintiff could perform work. (*Id*. at 21-23.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1)[1]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any

---

[1] Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier Regulations and SSRs.

statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c).

The relevant factors considered in determining what weight to afford a medical opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 416.927(c)(1)-(6).

On September 4, 2015, consultative examiner, Adam Brownfeld, Ph.D., performed a psychiatric evaluation, an intelligence evaluation, and completed a medical source statement form. (T. 407-414.) On psychiatric exam, Dr. Brownfeld observed Plaintiff was cooperative and her presentation was adequate. (T. 404.) He observed Plaintiff appeared her stated age, was well groomed, had good posture, had normal motor behavior, and her eye contact was appropriate. (*Id*.) Dr. Brownfeld noted Plaintiff's speech was fluent, her quality of voice was clear, and her expressive and receptive language was adequate. (*Id*.) He noted Plaintiff's thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting. (*Id*.) He observed Plaintiff's affect was of full range and appropriate in speech and thought content. (*Id*.) Plaintiff's mood was euthymic, her sensorium was clear, and she was oriented. (*Id*.) Dr. Brownfeld observed Plaintiff's attention and concentration were impaired. (*Id*.) He noted her recent and remote memory skills were impaired. (T. 405.) Dr. Brownfeld noted Plaintiff's insight and judgment were poor. (*Id*.) Dr. Brownfeld listed Plaintiff's diagnoses as schizoaffective disorder, learning disorder, and unspecified personality disorder. (T. 406.)

6

In a medical source statement, Dr. Brownfeld opined Plaintiff was not limited in her ability to: follow and understand simple directions and instructions; and perform simple tasks independently. (T. 405.) Dr. Brownfeld opined Plaintiff was "moderately" limited in her ability to: maintain attention and concentration; maintain a regular schedule; and learn new tasks. (*Id*.) He opined Plaintiff was "markedly" limited in her ability to: perform complex tasks independently and required supervision; make appropriate decisions; relate adequately with adults; and appropriately deal with stress. (*Id*.)[2]

In addition to his medical source statement, Dr. Brownfeld completed a medical source statement form. (T. 411-412.) Dr. Brownfeld indicated Plaintiff had no limitations in her ability to: understand and remember simple instructions; and, carry out simple instructions. (T. 411.)[3] Dr. Brownfeld indicated Plaintiff had "mild" limitations in her ability to make judgments on simple work related decisions. (*Id*.) The doctor opined Plaintiff had "extreme" limitations in her ability to: understand and remember complex instructions; carry out complex instructions; and make judgments on complex work related decisions. (*Id*.) Dr. Brownfeld checked both boxes "marked" and "extreme" in the following work related mental activities: interact appropriately with the public; interact appropriately with supervisors; interact appropriately with co-workers; and

---

[2] Dr. Brownfeld provided the same medical source statement after performing Plaintiff's intelligence testing. (T. 409-410.)

[3] The form contained the following options and definitions: none – absent or minimal limitations . . . if limitations are present they are transient and/or expected reaction to psychological stresses; mild – there is a slight limitations in this area, but the individual can generally function well; moderate – there is more than a slight limitations in this area but the individual is still able to function satisfactorily; marked – there is serious limitation in the area . . . there is substantial loss in the ability to effectively function; and extreme – there is major limitation in this area . . . there is no useful ability to function in this area. (T. 411.)

7

respond appropriately to usual work situations and to changes in a routine work setting. (T. 412.) Dr. Brownfeld stated his assessment was supported by Plaintiff's "unmedicated" schizoaffective disorder, poor coping skills, and lack of patience. (*Id*.) Dr. Brownfeld provided the only medical source statement in the record.

On January 13, 2014, non-examining State agency medical examiner, C. Butensky, reviewed the record. (T. 98-100.) Dr. Butensky noted the only evidence in the file for his review was "old" mental health records dated 1999 through 2007. (T. 98.) Dr. Butensky noted Plaintiff failed to complete her activities of daily living ("ADL") form. (*Id*.) The doctor stated the evidence in the file was insufficient for a disability determination. (T. 99.)

As indicated by Dr. Butensky, the record contains numerous mental health treatment notes; however, the notes are dated 2001 through 2007, well before Plaintiff's 2013 filing date. Plaintiff received some mental health counseling in 2015 from Joan Liggetto, LCSW, the same provider who treated Plaintiff between 2001 and 2007. In a letter dated September 11, 2015, Ms. Liggetto stated Plaintiff was seen on June 29, 2015 for an intake and diagnosed with major depressive disorder. (T. 416.) Treatment notations dated June 29, 2015, contained reports of depression, lack of motivation, and familial relationship conflicts. (T. 418.) A mental status examination revealed Plaintiff was well groomed, appropriately dressed, with a depressed affect, intact thought processes, and normal thought content. (*Id*.) Plaintiff denied hallucinations. (*Id*.) Plaintiff did not show for her July 16, 2015 appointment. (T. 419.)

On October 16, 2015, Plaintiff presented for treatment at Orleans County Clinic for depression and anxiety. (T. 478.) Plaintiff reported symptoms of depression,

anxiety, anger, and "commanding auditory hallucinations." (*Id*.) Plaintiff reported her auditory hallucinations were "much more manageable" when she was on medication. (*Id*.) Alyssa Hancock, LMSW, observed Plaintiff was well oriented, alert, with appropriate affect and irritable mood. (T. 487.) Plaintiff's eye contact was fair, her speech was logical and coherent, her memory was not impaired, she had a "negligible degree of conceptual disorganization," her thought processes was "characterized by no significant preoccupations," Plaintiff denied hallucinations and none were evident. (*Id*.) Plaintiff was "open and cooperative" and her attention/concentration was "characterized by ability to attend and maintain focus." (T. 488.) Plaintiff showed poor frustration tolerance. (*Id*.) The initial assessment was not completed and Plaintiff was scheduled to return at a later date. (*Id*.)

Plaintiff returned to Orleans County Clinic on October 21, 2015. (T. 490.) At that time she complained of depression and anxiety, and wanted to restart her medications. (*Id*.) Plaintiff was encouraged to establish with a primary care provider to "get back on a medication regimen." (T. 502.) Plaintiff's follow up appointment was scheduled for October 28, 2015. (*Id*.) A notation dated November 18, 2015, indicated Plaintiff was being discharged for lack of attendance. (T. 503.)

On January 13, 2016, Plaintiff presented to Pembroke Family Medicine to restart her medication. (T. 506.) She reported depression. (*Id*.) On exam, Laraine Wende, N.P. noted Plaintiff was cooperative and appropriate, her affect was normal, and her speech was clear and appropriate. (T. 507.) There are no further records from Pembroke Family Medicine in the record.

The ALJ afforded Dr. Brownfeld's opinion "partial weight." (T. 30.) A majority of the ALJ's RFC determination is supported by Dr. Brown's opinion. The ALJ limited Plaintiff to simple, routine, repetitive work which is consistent with Dr. Brown's opinion that Plaintiff had no limitations in her ability to understand, remember, and carry out simple instructions, and mild limitations in her ability to make judgments on simple work related decisions. (T. 25, 411.) Further, although the ALJ found Dr. Brownfeld's limitations in understanding, remember, and carrying out complex instructions and making judgment on complex work related decision "overly restrictive" when compared to the doctor's examination, the ALJ's ultimate RFC comports with this portion of Dr. Brownfeld's opinion. (T. 25, 30, 411.) The ALJ limited Plaintiff to simple, repetitive, routine work which is consistent with Dr. Brownfeld's opinion Plaintiff could perform the requirements of simple, routine work and not complex work.

The ALJ found Dr. Brownfeld's social limitations "overly restrictive" and afforded that portion of his opinion "little weight." (T. 30-31.) The ALJ reasoned Dr. Brownfeld's social limitations were inconsistent with objective mental status examinations, lack of evidence to support hallucinations, and Plaintiff's activities of daily living. (T. 31.) The ALJ noted objective mental status examinations described Plaintiff as cooperative and appropriate. (*Id*.) The ALJ further found Dr. Brownfeld's social limitations inconsistent with Plaintiff's ability to maintain a long term romantic relationship. (*Id*.) The ALJ also stated Dr. Brownfeld's opinion was "overly restrictive" when compared to the record as a whole. (*Id*.)

Plaintiff asserts the ALJ committed legal error in formulating his RFC because, in general, an ALJ is precluded from assessing Plaintiff's RFC in the absence of a medical

opinion. (Dkt. 13 at 9-11.) Plaintiff further argues the ALJ erred in his assessment of Dr. Brownfeld's opinion because the ALJ rejected portions of the opinion without citing any other contrary medical opinion. (*Id*. at 11-13.)

Here, the ALJ did not err in rejecting portions of Dr. Brownfeld's opinion absent a contrary medical opinion. Plaintiff asserts "an ALJ is not free to reject medical opinion evidence without citing to another medical opinion absent an overwhelmingly compelling justification." (Dkt. No. 13 at 12.) Plaintiff contends in doing so, the ALJ impermissibly set his own expertise against that of a physician. (*Id.*)

In support of her argument, Plaintiff relies on *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). In *Balsamo*, the Second Circuit held that the ALJ's failure to offer "any medical opinion to dispute the treating physicians' conclusions that [the plaintiff] could not perform sedentary work" merited remand. *Balsamo*, 142 F.3d at 81, 82. However, as the Second Circuit has since explained, at the time of the Court's decision in *Balsamo*, "it was the Commissioner's burden to demonstrate that the [plaintiff] retained the functional capacity for certain work . . . here, [plaintiff] had a duty to prove a more restrictive RFC, and failed to do so." *Smith v. Berryhill*, No. 17-2005-CV, 2018 WL 3202766, at *4 (2d Cir. June 29, 2018) (citing 42 U.S.C. § 423(d)(5)); *cf. Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

The plaintiff in *Smith* argued no physician contradicted the opinion of his treating physician as to his ability to stay on task and maintain regular attendance and therefore

the ALJ erred in rejecting the opinion. *Smith*, 2018 WL 3202766, at *4. The Court held, an ALJ "is not required to identify evidence explicitly rebutting the opinions of [plaintiff's] treating physician before discounting or rejecting them." *Id*. The ALJ in *Smith* "deemed aspects of the treating physicians' opinions critically flawed and found that the opinions were inconsistent with other substantial evidence." *Id*. (citations omitted). As in *Smith*, the ALJ here cited specific objective medical evidence in the record which the ALJ found to be inconsistent with Dr. Brownfeld's limitations.

Here, the ALJ took great care to outline Dr. Brownfeld's opinion and provided rationale, with specific citation to evidence in the record, to support his determination to not adopt the opinion in full. (T. 26-27, 28-31.) The ALJ stated Dr. Brownfeld's opinion, that Plaintiff had marked to extreme limitations in interacting appropriately with the public, supervisors, and co-workers and responding appropriately to usual work situations and changes in routine work settings, was "overly restrictive." (T. 30.) The ALJ noted Dr. Brownfeld's objective examination during which he observed Plaintiff had a euthymic mood, but appropriate eye contact; adequate expressive and receptive language; coherent and goal directed thought processes with no evidence of hallucinations, delusions, or paranoia; and full range of affect. (T. 30-31.) The ALJ further noted records containing findings of depressed mood and affect, but also appropriate affect; logical and coherent speech; no significant preoccupations in thought content; cooperative and appropriate attitude; and clear speech. (T. 31, 403-404, 418, 487, 500, 507.) The ALJ further relied on Plaintiff's activities of daily living, such as her ability to maintain a long-term relationship. (T. 31.)

Elsewhere in his decision the ALJ addressed Plaintiff ability to interact appropriately with others. Regarding Plaintiff's ability to "occasionally" have contact with supervisors and the public, the ALJ stated he "accounted for consistent allegations of struggling with personal relationships, dysphoric moods, irritability, social withdrawal and isolation." (T. 29.) The ALJ noted Plaintiff's symptoms required no further limitations because "mental status examinations also reveal appropriate eye contact; cooperative and appropriate attitude; and normal affect." (*Id*.) The ALJ again noted Plaintiff's ability to maintain a long term relationship. (*Id*.) Although not an RFC assessment, the ALJ's step three rationale provided further insight into the ALJ's rationale. At step three, the ALJ determined Plaintiff had moderate difficulties in social functioning. (T. 22.) The ALJ relied on Plaintiff's testimony and objective mental status examinations in the record. (*Id*.) The ALJ noted he accounted for Plaintiff's moderate difficulties in social functioning by limiting her to occasional contact with supervisors and the public. (*Id*.)

Further, the ALJ did not impermissibly "substitute [his] own expertise or view of the medical proof for the treating physician's opinion." *Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015). Here, the ALJ rejected Dr. Brownfeld's social limitations, in part, because he found the limitations contrary to the doctor's own objective observations, as well as other providers' objective observations. Therefore, although no medical opinion specifically contradicted Dr. Brownfeld's opined limitations, the ALJ cited objective medical evidence and other evidence in the record to support his determination to afford the opinion less weight. *See Cruz v. Colvin*, 278 F. Supp. 3d 694, 700-701 (W.D.N.Y. 2017) (ALJ properly afforded limited weight to opinion plaintiff had moderate to marked

13

limitations in mental functioning where objective mental status examinations showed normal thought process and good concentration, normal speech, good concentration, and intact judgment). Therefore, the ALJ properly reasoned that objective medical evidence did not support Dr. Brownfeld's social limitations and his determination was supported by substantial evidence in the record.

Next, Plaintiff asserts the ALJ was precluded from assessing Plaintiff's RFC in the absence of a medical opinion. (Dkt. No. 13 at 10-11.) "However, where the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5 (2d Cir. 2017) (internal quotations and citation omitted).

As outlined herein, the ALJ's decision provided a thorough analysis to support his determination Plaintiff had the ability to perform "simple, repetitive tasks or instructions; have occasional contact with supervisors and public; and perform work that does not involve production line work to avoid stress." (T. 25.) The majority of the ALJ's RFC determination was supported by Dr. Brownfeld's opinion essentially limiting Plaintiff to simple, routine, repetitive work. (T. 405, 411-412.) The ALJ did not adopt Dr. Brownfeld's social limitations and no medical opinion specifically supported the ALJ's RFC in that area. However, the ALJ relied on objective evidence in the record, as well as Plaintiff's activities, to support his determination Plaintiff could have occasional contact with supervisors and the public. (T. 29, 30-31.) Therefore, the ALJ's determination Plaintiff could have occasional social interactions was supported by the

record as a whole.  Overall, the ALJ properly assessed Plaintiff's RFC and his determination was supported by substantial evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: November 13, 2018

*William B. Mitchell Carter*
U.S. Magistrate Judge